IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-CV-470-D

| | |
|---|---|
| WATERFORD I AT CARY PARK CONDOMINIUM HOMEOWNERS ASSOCIATION, INC., <br><br> Plaintiff, <br><br> v. <br><br> NATIONWIDE PROPERTY AND CASUALTY INSURANCE COMPANY, <br><br> Defendant. | **ORDER** |

On October 19, 2022, Waterford 1 at Cary Park Condominium Homeowners Association, Inc. ("Waterford" or "plaintiff") filed a complaint in Wake County Superior Court alleging breach of contract, violations of North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), and bad faith [D.E. 1-2]. On November 21, 2022, Nationwide Property and Casualty Insurance Company ("Nationwide" or "defendant") timely removed the action to this court [D.E. 1]. On December 27, 2022, Nationwide moved to dismiss the UDTPA claim and bad faith claim for failure to state a claim upon which relief can be granted [D.E. 10] and filed a memorandum in support [D.E. 11]. See Fed. R. Civ. P. 12(b)(6). On January 31, 2023, Waterford responded in opposition [D.E. 13]. On February 14, 2023, Nationwide replied [D.E. 14]. As explained below, the court grants Nationwide's motion to dismiss and dismisses Waterford's UDTPA and bad faith claims.

I.

Waterford owns and operates a residential homeowner's association comprised of six real properties in Cary, North Carolina located at 200, 300, 400, 500, 600, and 800 Waterford Lake

Drive, including some storage areas. See Compl. [D.E. 1-2] ¶ 3. Waterford entered an insurance contract with Nationwide, Premier Businessowners Insurance Policy No. ACP BPHK 2222925301 ("Policy"). See id. at ¶ 10. On September 25, 2020, a wind and hail storm damaged six properties that Waterford owned. See id. at ¶¶ 3, 15. Waterford timely reported the damages to Nationwide. Nationwide assigned claim number 194138-GL and a claim adjuster to Waterford's alleged loss. See id. at ¶¶ 16–17.

After Nationwide's inspection, the adjuster adjusted the loss to buildings 400 and 600 and 800 storage to allow for full roof replacement, but did not adjust the loss for buildings 200, 300, 500, and 800 to allow for full roof replacement. See id. at ¶¶ 29–30. Waterford requested reconsideration and a reinspection of buildings 200, 300, 500, and 800. See id. at ¶ 31.

In response, the adjuster retained engineering firm Rimkus Consulting Group, Inc. ("Rimkus") to inspect the properties and prepare a cause and origin report of the damages to buildings 200, 300, 500, and 800. See id. at ¶ 32. On December 18, 2020, Waterford's roof contractor emailed the adjuster and provided estimates for roof replacement, attached photographs of the damages, and opined that roof repair is not effective and cannot be warrantied. See id. at ¶ 33. Waterford's roof contractor also provided the adjuster with videos showing additional damage, missing shingles, mat transfer, adhesive transfer, and zippering to demonstrate that a roof contractor could not properly repair the damages sustained to buildings 200, 300, 500, and 800. See id. at ¶ 34. On January 27, 2021, Waterford's roof contractor notified the adjuster that Unit 232 at Building 200 had a leak, and a temporary tarp would be installed. See id. at ¶ 36. In response, the adjuster stated he would "make a note." Id. at ¶ 37. On February 1, 2021, Rimkus prepared a causation report on behalf of Nationwide noting wind damage to the roofs of buildings 200, 300, 500, and 800. See id. at ¶¶ 38–39.

2

On February 2, 2021, after its adjuster's investigation and Rimkus's re-inspection, Nationwide issued a written partial denial letter to Waterford. See id. at ¶¶ 40–41. Nationwide reasoned that its investigation revealed defective roofing materials and improper construction as a partial cause of loss for building numbers 200, 300, 500, and 800; therefore, Nationwide denied coverage for a portion of Waterford's claim, and Nationwide agreed to repair the wind damaged portion of the roofs to buildings 200, 300, 500, and 800. See id. at ¶¶ 16–17, 23–41. On February 5, 2021, Nationwide issued a final claim payment of $26,839.66 for "additional items that were needed to replace the ones that have been paid for in the first check send." Id. at ¶ 42; Compl. Ex. E [D.E. 1-2] 98. Nationwide's final claim payment letter also noted that it had made payments totaling approximately $101,960.28, which included payments for buildings 200, 300, 400, 500, 600, 800, and 800 storage. See Compl. ¶ 43; Compl. Ex. E 98–100. On June 3, 2021, Nationwide issued a supplemental claim payment for $32,036.28 for buildings 400 and 600 and 800 storage. See Compl. ¶ 44; Compl. Ex. G [D.E. 1-2] 112.

After the payments, the parties continued to disagree over the evaluation and cause of the loss. Waterford retained (1) IA Engineering and Designs to inspect the properties and prepare a cause and origin report for the damages sustained as a result of the loss, (2) Richard Roth of Southern Restoration Services, LLC to inspect the properties and prepare damage estimates for the damages sustained to buildings 200, 300, 500, and 800, and (3) meteorologist Rocco Calaci of LRC Services to prepare a meteorological report of the weather data which affected the properties on the date of loss by analyzing weather data from multiple reliable sources. See id. at ¶¶ 34–35, 48, 51–58. Waterford submitted these reports to Nationwide. After reviewing the reports, Nationwide responded that its opinion had not changed and that it continued to rely on the policy exclusions of wear, tear, and deterioration, improper maintenance, and defective workmanship to maintain its

3

claim denial concerning buildings 200, 300, 500, and 800. Because Nationwide and Waterford continue to dispute the cause of any alleged damages to the properties, the valuation of damage to the properties, and the amount of damage attributed to the wind and hail, Waterford filed suit.

II.

The parties agree that North Carolina law applies to Waterford's three claims. Nationwide concedes that Waterford plausibly alleges a breach of contract claim, but moves to dismiss the UDTPA and bad faith claims under Rule 12(b)(6). See [D.E. 11]. A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[ ] [its] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,

4

637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court may also consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity." Goines, 822 F.3d at 166. Additionally, a court may take judicial notice of public records without converting the motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

A.

Nationwide asserts that Waterford failed to plead any aggravating factors to elevate its breach of contract claim to an unfair and deceptive trade practice claim. See [D.E. 11] 5–11. The UDTPA provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75-1.1(a). To state an unfair and deceptive trade practices claim, a plaintiff must plausibly allege: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs. See Barbour v. Fid. Life Ass'n, 361 F. Supp. 3d 565, 573 (E.D.N.C. 2019); Kelly v. Ga.-Pac., LLC, 671 F. Supp. 2d 785, 798 (E.D.N.C. 2009); SciGrip, Inc. v. Osae, 373 N.C. 409, 426, 838 S.E.2d 334, 347 (2020); Walker v. Fleetwood Homes of N.C., Inc., 362 N.C. 63, 71–72, 653 S.E.2d 393, 399 (2007). "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. A practice is deceptive if it has the capacity or tendency to deceive." Walker, 362 N.C. at 72, 653 S.E.2d at 399 (cleaned up). A plaintiff need not "show fraud, bad faith, deliberate or knowing acts of deception, or actual deception, but plaintiff must show that the acts complained of possessed the tendency or capacity to mislead, or created the likelihood of deception." Gress v. Rowboat Co., 190

5

N.C. App. 773, 776, 661 S.E.2d 278, 281 (2008) (cleaned up); see Overstreet v. Brookland, Inc., 52 N.C. App. 444, 452–53, 279 S.E.2d 1, 7 (1981). However, a "mere breach of contract, even if intentional, is not an unfair or deceptive act[.]" Waddell v. U.S. Bank Nat'l Ass'n, 395 F. Supp. 3d 676, 684 (E.D.N.C. 2019) (collecting cases); see PCS Phosphate Co. v. Norfolk S. Corp., 559 F.3d 212, 224 (4th Cir. 2009); Repress v. Crop Prod. Servs., Inc., No. 4:15-CV-00176, 2016 WL 3821163, at *5 (E.D.N.C. July 13, 2016) (unpublished); see SciGrip, 373 N.C. at 427, 838 S.E.2d at 34; Bob Timberlake Collection, Inc. v. Edwards, 176 N.C. App. 33, 42, 626 S.E.2d 315, 323 (2006); Mitchell v. Linville, 148 N.C. App. 71, 75, 557 S.E.2d 620, 623–24 (2001); Branch Banking & Tr. Co. v. Thompson, 107 N.C. App. 53, 61–62, 418 S.E.2d 694, 700 (1992).

North Carolina law "does not permit a party to transmute a breach of contract claim into a ... UDTPA claim ... because awarding punitive or treble damages would destroy the parties' bargain...." PCS Phosphate, 559 F.3d at 224; see Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 347 (4th Cir. 1998) (collecting cases). However, if substantial aggravating circumstances accompany a breach of contract, then those circumstances can create a UDTPA claim. See Bartolomeo v. S.B. Thomas, Inc., 889 F.2d 530, 535 (4th Cir. 1989); United Roasters, Inc. v. Colgate-Palmolive Co., 649 F.2d 985, 992 (4th Cir. 1981); Burrell v. Sparkkles Reconstruction Co., 189 N.C. App. 104, 111, 657 S.E.2d 712, 717 (2008); Branch Banking & Tr. Co., 107 N.C. App. at 62, 418 S.E.2d at 700. Generally, substantial aggravating circumstances include some element of deception, such as forged documents, lies, or fraudulent inducements. See Stack v. Abbott Labs., Inc., 979 F. Supp. 2d 658, 668 (M.D.N.C. 2013); Kerry Bodenhamer Farms, LLC v. Nature's Pearl Corp., No. 16 CVS 217, 2017 WL 1148793, at *7 (N.C. Super. Ct. Mar. 27, 2017) (unpublished).

Nationwide contends that Waterford does not plausibly allege any facts independent of those cited in support of its breach of contract claim, let alone any facts plausibly demonstrating substantial

6

aggravating factors. See [D.E. 11] 11–14. Waterford responds that it need not plead substantial aggravating factors. See [D.E. 13] 9. Rather, Waterford contends that it alleged sufficient behavior on the part of Nationwide to state a UDTPA claim. See id. at 11–15.

Although Waterford has alleged facts suggesting that the alleged breach of contract was intentional, Waterford does not plausibly allege substantial aggravating factors. Waterford states in a conclusory manner that Nationwide "unfairly, unlawfully and, in bad faith, failed to settle promptly and to pay the claim[,]" that Nationwide "willfully engag[ed] in such acts or practices, and [that] there was an unwarranted refusal by [Nationwide] to fully resolve the" contract dispute. See Compl. ¶¶ 93, 96. Waterford alleges that Nationwide misrepresented pertinent facts and portions of the damages. And Waterford states that all of Nationwide's actions, including its investigations, estimates, and other responses to Waterford's request for damages "w[ere] not reasonable" without providing any aggravating factors raising the damages dispute from a mere breach of contract claim to an unfair and deceptive trade practices claim. See id. at ¶ 96. Moreover, although Waterford alleges that Nationwide failed to promptly respond to its information, investigate the claims, and otherwise resolve the dispute, Waterford's complaint states that Nationwide inspected the property multiple times, adjusted estimates based Waterford's submissions, made payments, and provided Waterford with its reasoning and reports that outline the factual basis for its decisions and responses to Waterford's submissions. See id. at ¶¶ 18, 20–23, 27, 28, 35, 40–42, 45, 59–67; Compl. Ex. B [D.E. 1-2] 62–75; Compl. Ex. C [D.E. 1-2] 77–91; Compl. Ex. D [D.E. 1-2] 93–96; Compl. Ex. E 98–100; Compl. Ex. F [D.E. 1-2] 102–10; Compl. Ex. G 112; Compl. Ex. N [D.E. 1-2] 272–74. The general factual allegations in the complaint involve claims indistinguishable from the underlying breach of contract, which cannot by themselves support a UDTPA claim. See, e.g., PCS Phosphate Co., 559 F.3d at 224; Repress, 2016 WL 3821163, at *5; Rider v. Hodges, 255 N.C. App. 82, 90–91,

7

804 S.E.2d 242, 249 (2017); Mitchell, 148 N.C. App. at 75, 557 S.E.2d at 623–24. Accordingly, the court dismisses Waterford's UDTPA claim.

B.

Nationwide seeks to dismiss Waterford's bad faith refusal to settle and insurance claim. See [D.E. 11] 11–14. North Carolina recognizes bad faith refusal to settle an insurance claim. See, e.g., Cleveland Constr., Inc. v. Firemen's Fund Ins. Co., 819 F. Supp. 2d 477, 483 (W.D.N.C. 2011); Robinson v. N.C. Farm Bureau Ins. Co., 86 N.C. App. 44, 49–50, 356 S.E.2d 392, 395–96 (1987); Dailey v. Integon Gen. Ins. Corp., 57 N.C. App. 346, 349–50, 291 S.E.2d 331, 333 (1982). North Carolina uses the law of the situs test to determine the choice of law for tort claims. See Boudreau v. Baughman, 322 N.C. 331, 335, 368 S.E.2d 849, 854 (1988); Harco Nat'l Ins. Co. v. Grant Thornton, LLP, 206 N.C. App. 687, 692, 698 S.E.2d 719, 722 (2010). "[T]he state where the injury occurred is considered the situs of the claim." Boudreau, 322 N.C. at 335, 368 S.E.2d at 854; see Harco, 206 N.C. App. at 692, 698 S.E.2d at 722. The court must scrutinize the allegations in the complaint to determine "where the plaintiff has actually suffered harm." Harco, 206 N.C. App. at 697, 698 S.E.2d at 726. "In cases involving financial injuries, courts have considered the injury to be sustained where the economic loss was felt." Synovus Bank v. Coleman, 887 F. Supp. 2d 659, 669 (W.D.N.C. 2012) (quotation omitted); see Harco, 206 N.C. App. at 698, 698 S.E.2d at 726 (determining that the injury occurred in the state where funds were seized from a trust account); United Va. Bank v. Air-Lift Assocs., Inc., 79 N.C. App. 315, 321, 339 S.E.2d 90, 94 (1986) (concluding that the injury occurred in the state where property was sold).

Waterford alleges that Nationwide wrongfully refused to pay its insurance claim. In North Carolina, to state a claim of an insurer's bad faith refusal to pay a claim, at a minimum, a plaintiff must plausibly allege an insurer's refusal to pay a valid claim and bad faith. See Dailey, 57 N.C.

8

App. at 349–50, 291 S.E.2d at 333; see also Topsail Reef Homeowners Ass'n v. Zurich Specialties London, Ltd., 11 F. App'x 225, 237–38 (4th Cir. 2001) (per curiam) (unpublished).[1] Bad faith is conduct "not based on honest disagreement or innocent mistake." Dailey, 75 N.C. App. at 396, 331 S.E.2d at 155.

Waterford satisfies the first part of North Carolina's test because Waterford predicates its bad faith refusal to pay claim on a valid insurance contract between Waterford and Nationwide. See Compl. ¶¶ 10–14; Compl. Ex. A [D.E. 1-2] 35–60. But Waterford plausibly allege Nationwide's bad faith concerning its claim. After using judicial experience and common sense to strip away conclusory allegations, including that Nationwide failed to investigate the claims "fairly and adequately" or that Nationwide "conscious[ly] and intentional[ly] disregarded" its arguments and rights, see Compl. ¶¶ 126–43, Waterford's complaint alleges that Nationwide inspected the property multiple times, adjusted estimates based on Waterford's submissions, made payments, and provided Waterford with its reasoning and reports that outline the factual basis for its decisions and responses to Waterford's submissions. See id. at ¶¶ 18, 20–23, 27, 28, 35, 40–42, 45, 59–67; Compl. Ex. B 62–75; Compl. Ex. C 77–91; Compl. Ex. D 93–96; Compl. Ex. E 98–100; Compl. Ex. F 102–10; Compl. Ex. G 112; Compl. Ex. N 272–74; cf. Iqbal, 556 U.S. at 678–79; Giarratano, 521 F.3d at 302. At most, Waterford alleges an honest dispute with Nationwide's insurance estimate and a potential breach of contract. Those allegations, however, do not plausibly constitute bad faith. See

---

[1] Some courts applying North Carolina law have mentioned proof of "aggravating or outrageous conduct." See, e.g., Topsail Reef, 11 F. App'x at 237; Cleveland Constr., 819 F. Supp. 2d at 483. But those courts relied upon Lovell v. Nationwide Mut. Ins. Co., 108 N.C. App. 416, 424 S.E.2d 181, 184 (1993), for the tort elements, and Lovell set forth the elements "to recover punitive damages for the tort of an insurance company's bad faith refusal to settle[.]" Lovell, 108 N.C. App. at 420, 424 S.E.2d at 184 (emphasis added). Regardless of whether a plaintiff always must prove aggravating conduct, a plaintiff first must plausibly allege a valid claim and the insurer's bad faith.

9

Olive v. Great Am. Ins. Co., 76 N.C. App. 180, 189, 333 S.E.2d 41, 46 (1985); Dailey, 75 N.C. App. at 396, 331 S.E.2d at 155. Tellingly, Waterford failed to respond to Nationwide's arguments for dismissing Waterford's bad faith claim. See [D.E. 13]; see also [D.E. 14] 1–2. Waterford's silence speaks volumes. Cf. McLean v. Leonard, No. 5:14-CV-718, 2015 WL 5725818, at *6 (E.D.N.C. Sept. 30, 2015) (unpublished) ("Plaintiff conceded these arguments by failing to address them in response to defendants' motion to dismiss."); Mountain Land Props., Inc. v. Lovell, 46 F. Supp. 3d 609, 621–22 (W.D.N.C. 2014) (same). Accordingly, the court dismisses Waterford's bad faith claim.

III.

In sum, the court GRANTS defendant's motion to dismiss [D.E. 13] and DISMISSES plaintiffs's second and third causes of action for violations of the UDTPA and bad faith. Plaintiff may proceed with its breach of contract claim.

SO ORDERED. This 14 day of April, 2023.

                                      JAMES C. DEVER III
                                      United States District Judge